**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-24-0000306**
**02-JUL-2026**
**07:59 AM**
**Dkt. 81 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


---oOo---


DAVID LEONARD K. HALLUMS,
Plaintiff-Appellant/Cross-Appellee,
v.
PAUL ALSTON, in his individual capacity;
GALEN KĪKAHA CHEE, in his individual capacity,
Defendants-Appellees/Cross-Appellants,
and
DOE PERSONS 1-10; DOE CORPORATIONS and PARTNERSHIPS 1-10;
ROE "NON-PROFIT" CORPORATIONS 1-10;
DOE UNINCORPORATED ORGANIZATIONS 1-10;
ROE GOVERNMENTAL ENTITIES 1-10, Defendants


NO. CAAP-24-0000306


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CCV-23-0001132)


July 2, 2026


HIRAOKA AND GUIDRY, JJ., WITH LEONARD, PRESIDING JUDGE,
CONCURRING AND DISSENTING SEPARATELY


OPINION OF THE COURT BY HIRAOKA, J.


This appeal involves the Hawaii Public Expression

Protection Act (**HPEPA**), Hawaii Revised Statutes Chapter 634G.

David Leonard K. **Hallums** (a police officer and vice-president of

the labor union representing police officers) sued Paul **Alston**

and Galen Kīkaha **Chee** (attorneys defending parties Hallums sued in another lawsuit) over three letters Chee had written to the Honolulu Police Department and its chief. Alston and Chee filed a special motion to dismiss under HPEPA. The Circuit Court of the First Circuit granted the motion and awarded Alston and Chee attorney fees, but denied Alston and Chee's motion for sanctions under **Rule 11** of the Hawaiʻi Rules of Civil Procedure (**HRCP**).[1]

Hallums appeals, and Alston and Chee cross-appeal, from the *Final Judgment*. We hold that the circuit court did not err by granting Alston and Chee's special motion to dismiss and awarding them attorney fees. We also hold that the circuit court acted outside its discretion by denying the Rule 11 motion without sufficiently explaining its reasons. We affirm the Final Judgment, but vacate the order denying the motion for Rule 11 sanctions and remand for post-judgment proceedings on the motion.

## I. BACKGROUND

In a letter dated May 4, 2022 to Robert **Cavaco**, then president of the State of Hawaii Organization of Police Officers (**SHOPO**), Honolulu Police Department (**HPD**) interim chief Rade K. **Vanic** wrote:

> There is an understanding between the HPD and the previous SHOPO administration that union officials who are performing union-related work may be placed on special assignment and remain on leave with pay status. However, this special assignment does not extend to union-related business for travel to conferences on the outer islands and the continental United States.
>
> Sergeant Hallums will be sent a notification letter informing him that he was incorrectly placed on special assignment and should have been deducted leave while away from his work assignment to attend the two conferences.

---

[1] The Honorable Dean E. Ochiai presided.

2

Four weeks later, Hallums sued SHOPO and its board members, officers (including Cavaco), employees, and others.[2]  He was represented by attorney Bosko **Petricevic**.  His complaint alleged that the defendants conspired to illegally remove him from his position as SHOPO's vice-president.

Alston and Chee defended SHOPO and most of the other defendants against Hallums's lawsuit.  By letter to HPD's Professional Standards Office (**PSO**) dated July 15, 2022, Chee wrote:

> I represent the State of Hawaiʻi Organization of Police Officers ("SHOPO") and am writing to inform you about possible violations of Honolulu Police Department (the "Department") policy and falsification or tampering with government documents by David L. K. Hallums ("Hallums").  I am hereby requesting that the department initiate a criminal and/or administrative investigation into Hallums' request and receipt of authorized release time off, also known as, Special Assignment ("SA") leave to attend Mainland conferences on behalf of SHOPO, once in 2018, and twice in 2019.

In a letter to PSO dated July 28, 2022, Chee wrote:

> This letter is a follow up to our Complaint Regarding David L. K. Hallums, dated July 15, 2022 (the "Complaint") and is based on discussions with Detective Brandon Nakasone ("Nakasone") and Acting Lieutenant Micah Putnam ("Putnam") regarding the Honolulu Police Department's ("HPD") refusal to investigate in a criminal or administrative manner, criminal misconduct by David L. K. Hallums ("Hallums").
>
> . . . .
>
> After submitting the Complaint, Nakasone (on behalf of the Criminal Investigation Section) and later, Putnam (on behalf of the Administrative Investigation Section) informed me that the Professional Standards Office ("PSO") is unable to pursue the matter because the one year statute of limitations prescribed in HPD Policy 5.01 has lapsed.  That position is clearly wrong.  Because the reported misconduct

---

[2]  We take judicial notice of the documents filed in Hallums v. State of Hawaii Organization of Police Officers, JIMS Case ID 1CCV-22-0000630.  See Rule 201, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (2016).

> involves multiple crimes, PSO has the power to initiate administrative investigations at any time within the applicable limitations period prescribed in the penal code. *See* HPD Policy 5.01.

(Footnote omitted.)

And in a letter to HPD's chief dated July 29, 2022, Chee wrote:

> We represent the State of Hawaiʻi Organization of Police Officers ("SHOPO") in a litigation matter involving Officer David L. K. Hallums. The purpose of this letter is to urge the Honolulu Police Department ("HPD") to investigate possible criminal violations by Officer David L. K. Hallums ("Hallums").

Hallums filed a second amended complaint on March 22, 2023. SHOPO answered and counterclaimed against Hallums for breach of fiduciary duty. The counterclaim alleged that Hallums

> violated SHOPO's and HPD's longstanding understanding and practice of requiring SHOPO leaders who traveled to the mainland to attend conferences for union business to do so "on their own time" by improperly seeking and obtaining authorized excused/release time off (with on-duty pay) from the Honolulu Police department to attend mainland conferences for SHOPO[.]

Within three weeks, Hallums moved for leave to file a third amended complaint. He sought to add claims against Alston and Chee. The motion was heard on August 29, 2023. The trial court stated:

> With respect to the allegations specific to Mr. Alston and Mr. Chee . . . it's too late to be adding new defendants and new facts. [Hallums] can make those allegations in a separate lawsuit if he truly wants to do so.

Hallums filed the lawsuit giving rise to this appeal the same day. His amended complaint — factually based entirely on Chee's letters to HPD and its chief — alleged causes of action titled: (1) "Civil Conspiracy to Retaliate, Make False Criminal

Allegations and Reports, Commmit [sic] Fraud and Defame";
(2) "Racketeering"; (3) "Defamation"; (4) "Negligent Infliction of Emotional Distress"; (5) "Intentional Infliction of Emotional Distress"; (6) "False Light"; and (7) "Malicious Defense and Defense of Improper Purpose and Bad Faith Tort."

Alston and Chee filed a special motion to dismiss under Hawaii Revised Statutes (**HRS**) § 634G-3(a). They also moved for sanctions against Hallums and Petricevic under HRCP Rule 11. The circuit court granted the motion to dismiss but denied the motion for Rule 11 sanctions.

Alston and Chee moved for an award of attorney fees. The circuit court granted the motion. The Final Judgment was entered on April 16, 2024. This appeal and cross-appeal followed.

## II. POINTS OF ERROR

Hallums contends the circuit court erred by granting Alston and Chee's special motion to dismiss and motion for attorney fees.

Alston and Chee contend the circuit court erred by denying their motion for Rule 11 sanctions.

## III. STANDARDS OF REVIEW

### HPEPA Special Motion to Dismiss

We review an order granting an HPEPA special motion to dismiss *de novo*. "In ruling on a [special motion to dismiss] under section 634G-3(a), the court shall consider the parties' pleadings, the motion, any replies and responses to the motion,

and any evidence that could be considered in ruling on a motion for summary judgment under the applicable Hawaii rules of civil procedure." HRS § 634G-5 (Supp. 2022).

We review a grant of summary judgment *de novo*. <u>Nozawa v. Operating Engineers Local Union No. 3</u>, 142 Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018). Summary judgment is appropriate when the moving party shows that the material facts are uncontroverted and it is entitled to judgment as a matter of law. <u>Id.</u> at 342, 418 P.3d at 1198. Once the movant has satisfied its burden, the party opposing summary judgment must "demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." <u>Id.</u>

### **Attorney Fees**

We review an order granting attorney fees under the *abuse of discretion* standard. <u>Cowan v. Exclusive Resorts PBL1, LLC</u>, 156 Hawaiʻi 268, 272, 574 P.3d 288, 292 (2025). A court abuses its discretion if it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant. <u>Id.</u>

### **HRCP Rule 11 Sanctions**

We review a ruling on a Rule 11 motion under the *abuse of discretion* standard. <u>Gap v. Puna Geothermal Venture</u>, 106 Hawaiʻi 325, 331, 104 P.3d 912, 918 (2004).

## IV. DISCUSSION

Effective June 17, 2022, HPEPA replaced the Citizen Participation in Government Act, former HRS Chapter 634F. <u>See</u>

2022 Haw. Sess. Laws Act 96, §§ 1, 3, 5, at 215, 218.  The

legislature found:

>       to protect public participation at all levels of government,
> the State should adopt the provisions of the model act
> recommended by the Uniform Law Commission.  By adopting the
> Uniform Act provisions, the State will have an anti-SLAPP
> [(**S**trategic **L**awsuits **A**gainst **P**ublic **P**articipation)] law that
> is among the best in the nation, with procedural protections
> for all parties, and clearer instructions for the courts on
> how to fairly and expeditiously dispose of SLAPP claims to
> ensure citizens are protected from punitive SLAPP suits.

Id. § 1 at 216.

>       HRS § 634G-2 (Supp. 2022) establishes HPEPA's scope:

> (a)   Except as otherwise provided in subsection (b), this
> chapter shall apply to a cause of action asserted against a
> person based on the person's:

>> (1)    Communication in a legislative, executive,
>> judicial, administrative, or other governmental
>> proceeding;

>> (2)    Communication on an issue under consideration or
>> review in a legislative, executive, judicial,
>> administrative, or other governmental
>> proceeding; or

>> (3)    Exercise of the right of freedom of speech or of
>> the press, the right to assemble or petition, or
>> the right of association, guaranteed by the
>> United States Constitution or the Hawaii State
>> Constitution, on a matter of public concern.

> (b)   This chapter shall not apply to a cause of
> action asserted:

>> (1)    Against a governmental unit or an employee or
>> agent of a governmental unit acting or
>> purporting to act in an official capacity;

>> (2)    By a governmental unit or an employee or agent
>> of a governmental unit acting in an official
>> capacity to enforce a law to protect against an
>> imminent threat to public health or safety; or

>> (3)    Against a person primarily engaged in the
>> business of selling or leasing goods or services
>> if the cause of action arises out of a
>> communication related to the person's sale or
>> lease of the goods or services.

> (c)   As used in this section:

>> "Goods or services" does not include a dramatic,
>> literary, musical, political, journalistic, or
>> artistic work.

> "Governmental unit" means a public corporation or government or governmental subdivision, agency, or instrumentality.
>
> "Person" means an individual, estate, trust, partnership, business or nonprofit entity, governmental unit, or other legal entity.

Hawaiʻi courts may use the official comments to the Uniform Public Expression Protection Act (Unif. L. Comm'n 2020) (**UPEPA**) to aid in interpreting HPEPA. See Mikelson v. United Servs. Auto. Ass'n, 122 Hawaiʻi 393, 399, 227 P.3d 559, 565 (App. 2010) (using Uniform Arbitration Act official comments to interpret Hawaiʻi Uniform Arbitration Act, HRS Chapter 658A).

### A.    The circuit court did not err by granting the special motion to dismiss.

UPEPA recognizes that a SLAPP plaintiff's "purpose is to ensnare their targets in costly litigation that chills society from engaging in constitutionally protected activity." UPEPA prefatory note at 1. HRS § 634G-3(a) (Supp. 2022) allows filing "a special motion to dismiss the cause of action or part of the cause of action" within sixty days after a party is served with a pleading to which HPEPA applies. HRS § 634G-4 (Supp. 2022) provides for an expedited hearing. The timely filing of a special motion to dismiss stays all other proceedings in the action. HRS § 634G-3(b)(1).

HRS § 634G-6 (Supp. 2022) establishes the procedure for a special motion to dismiss:

> (a)    In ruling on a motion under section 634G-3(a), the court shall dismiss with prejudice a cause of action or part of a cause of action if:
>
> > (1)    The moving party establishes under section 634G-2(a) that this chapter applies;

     (2)    The responding party fails to establish under section 634G-2(b) that this chapter does not apply; and

     (3)    Either:

         (A)    The responding party fails to establish a prima facie case as to each essential element of the cause of action; or

         (B)    The moving party establishes that:

            (i)    The responding party failed to state a cause of action upon which relief can be granted; or

            (ii)   There is no genuine issue as to any material fact and the party is entitled to judgment as a matter of law on the cause of action or part of the cause of action.

### 1. Alston and Chee established that HPEPA applied.

Under HRS § 634G-6(a)(1) the moving party — the SLAPP defendant — has the burden to establish that HPEPA applies for a reason identified in HRS § 634G-2(a).  See UPEPA § 7 cmt. 2.[3]

HPEPA applies to a cause of action asserted against a person based on the person's exercise of the right to "petition, . . . guaranteed by the United States Constitution or the Hawaii State Constitution, on a matter of public concern."  HRS § 634G-2(a)(3).  The First Amendment to the United States Constitution guarantees "the right of the people . . . to petition the Government for a redress of grievances."  Article I, section 4 of the Hawaiʻi Constitution similarly preserves the right "to petition the government for a redress of grievances."

---

[3]    UPEPA § 7, comment 2 states, in part:

Section 7(a)(1) establishes "Phase One" of the motion's procedure — applicability.  In this phase, the party filing the motion has the burden to establish the Act applies for one of the reasons identified in Section 2(b).

Hallums's causes of action against Alston and Chee were based on Chee's letters to HPD and its chief. Each letter was written on Chee's law firm's letterhead. The July 15, 2022 and July 29, 2022 letters stated Chee represented SHOPO; the July 28, 2022 letter was "a follow up to" the July 15 letter. The letters were thus written on SHOPO's behalf.

Interim chief Vanic's May 4, 2022 letter told SHOPO its vice-president, Hallums, was not entitled to special assignment leave with pay and "should have been deducted leave while away from his work assignment to attend the two conferences." Through Chee's July 15, 2022 letter, SHOPO asked HPD to initiate an investigation into Hallums receiving special assignment leave with pay to attend three Mainland conferences on its behalf (once in 2018, twice in 2019). Chee's July 28, 2022 letter was a follow-up after HPD indicated an inability to pursue the matter. Chee's July 29, 2022 letter to HPD's chief asked HPD to investigate possible criminal violations by Hallums.

HPD is a "governmental unit" within the meaning of HRS § 634G-2(c). Hallums's complaint and amended complaint asserted claims against Alston and Chee based on their exercise, as SHOPO's attorneys, of SHOPO's constitutional right to petition HPD on a matter of public concern. HRS § 634G-2(a)(3). The supreme court has recognized "the compelling public interest in instances of police misconduct given the importance of public oversight of law enforcement." Peer News LLC v. City & County of Honolulu, 138 Hawaiʻi 53, 74, 376 P.3d 1, 22 (2016).

The public also has an interest "to gauge the police department's responsiveness to specific instances of misconduct

and assess whether the agency is accountable to itself internally[.]"  State of Hawaii Organization of Police Officers v. City & County of Honolulu, 149 Hawaiʻi 492, 516, 494 P.3d 1225, 1249 (2021) (quotation marks omitted).  "The public's interest extends to those investigating misconduct and those accused of misconduct: the public should be assured that both the activity of public employees suspected of wrongdoing and the conduct of those public employees who investigate the suspects is open to public scrutiny."  Id. (cleaned up).

Hallums argues that "writing letters to [Hallums]'s employer to get him falsely prosecuted and fired is not covered by the SLAPP suit statute.  There was no public participation before a governmental body since such proceeding did not exist here."  Alston and Chee didn't have to show there was a "governmental proceeding" under HRS § 634G-2(a)(1) or (2), because they established that HRS § 634G-2(a)(3) applied — that Hallums's claims against them were based on Chee's exercise, as SHOPO's attorney, of SHOPO's right to petition the government on a matter of public concern — and the subsections are alternative, not cumulative.

Hallums relies on Perry v. Perez-Wendt, 129 Hawaiʻi 95, 294 P.3d 1081 (App. 2013).  That case was decided under former HRS Chapter 634F, based on the dictionary definition of "testimony" — not "communication," which appears in HRS § 634G-2(a)(1) and (2).  Id. at 100-01, 294 P.3d at 1086-87.  When the legislature repealed HRS Chapter 634F in 2022, it stated that "courts have often declined to apply its procedural protections due to its narrow and confusing provisions."  2022

11

Haw. Sess. Laws Act 96, § 1 at 215.  Perry does not apply here because the statutory language on which that case was decided was materially different from HRS § 634G-2.

Alston and Chee established that HPEPA applied.

### 2.  Hallums did not establish that HPEPA did not apply.

Even if the SLAPP defendant establishes HPEPA applies, the plaintiff can still defeat a special motion to dismiss by establishing one of the three exemptions under HRS § 634G-2(b).  See UPEPA § 7 cmt. 3.[4]

Hallums did not argue to the circuit court that any HRS § 634G-2(b) exemption applied, nor does he make the argument on appeal.

### 3.  Hallums failed to establish prima facie viability for any of his stated causes of action.

If the SLAPP plaintiff doesn't argue, or cannot establish, that an HRS § 634G-2(b) exception to HPEPA applies, it must show under HRS § 634G-6(a)(3)(A) that the challenged causes of action have "prima-facie viability."  The plaintiff "has the burden to show its case has merit by establishing a prima-facie case as to each essential element of the cause of action being challenged by the motion."  UPEPA § 7 cmt. 4.

---

[4]  UPEPA § 7, comment 3 states, in part:

Section 7(a)(2) is also part of "Phase One" of the motion's procedure.  Even if the Act applies for one of the reasons identified in Section 2(b), the Act may nevertheless not apply if the party against whom the motion is filed can establish the applicability of an exemption identified in Section 2(c).  A party seeking to establish the applicability of an exemption bears the burden of proof on that exemption.

> [A]ll a responding party must do to satisfy its burden under Phase Two is produce evidence that, if believed, would satisfy each element of the challenged cause of action. A court may not weigh that evidence, but rather must take it as true and determine whether it meets the elements of the moved-upon cause of action. If the responding party cannot establish a prima-facie case, then the motion must be granted and the cause of action (or portion of the cause of action) must be stricken or dismissed. If the responding party <u>does</u> establish a prima-facie case, then (and only then) the court moves to "Phase Three" of the motion's procedure.

<u>Id.</u> (citation omitted).

HRS § 634G-6(a)(3)(A) shows that HPEPA is not a substantive defense; it provides an expedited *procedure* for determining whether a SLAPP lawsuit has factual and legal merit without requiring the defendant to expend time and resources litigating — the objective of a SLAPP plaintiff. <u>See</u> UPEPA § 7 cmt. 4.[5]

If the SLAPP plaintiff's opposition memorandum and evidence establish a prima facie case, the SLAPP defendant's reply memorandum must show, under HRS § 634G-6(a)(3)(B), that (1) the challenged claim fails to state a cause of action upon which relief can be granted;[6] or (2) there is no genuine issue as to any material fact and the party is entitled to judgment as a

---

[5] UPEPA § 7, comment 4 states, in part:

> Anti-SLAPP laws do not insulate defendants from <u>any</u> liability for claims arising from protected rights of petition or speech. They only provide a procedure for weeding out, at an early stage, <u>meritless</u> claims arising from protected activity.

(Cleaned up.)

[6] <u>Cf.</u> HRCP Rule 12(b)(6) (dismissal for "failure to state a claim upon which relief can be granted").

matter of law on the challenged cause of action or part of the cause of action.[7]  See UPEPA § 7 cmt. 5.[8]

Hallums's amended complaint alleged seven causes of action.  His opposition memorandum did not cite legal authority for, or list the essential elements of, any of them.  He failed to establish the legal viability for any of his causes of action.

Hallums's opposition was supported by his declaration, and those of HPD corporal Don Faumuina, former SHOPO executive director Tenari Maafala, and former SHOPO president Malcolm Lutu.  They described facts relevant to Hallums's lawsuit against SHOPO for removing him from office.  None mentioned Alston or Chee.  Nor did the memorandum explain how those facts established elements of his claims against Alston and Chee.

> **4.  The circuit court did not need to conduct an HRS § 634G-6(a)(3)(B) analysis.**

Hallums's opposition memorandum discussed Alston and Chee's assertion of the litigation privilege and the Noerr-

---

[7]    Cf. HRCP Rule 56 (summary judgment).

[8]    UPEPA § 7, comment 5 states, in part:

Even if a responding party makes a prima-facie showing under Section 7(a)(3)(A), the moving party may still prevail if it shows that the responding party failed to state a cause of action upon which relief can be granted or that there is no genuine issue as to any material fact and the party is entitled to judgment as a matter of law — in other words, that the cause of action is not legally sound. . . .

. . . .

. . . [B]y employing a legal-viability standard, the Act recognizes that a SLAPP plaintiff can just as easily harass a defendant with a legally nonviable claim as it can with a factually nonviable one.

14

<u>Pennington</u> doctrine.[9]  Those affirmative defenses only become relevant if Hallums established, by evidence that could be considered under HRCP Rule 56, prima facie cases for his stated causes of action.  Because he didn't, the circuit court did not need to analyze whether Alston and Chee established that Hallums's amended complaint failed to state a cause of action upon which relief can be granted, or if there was no genuine issue of material fact and Alston and Chee were entitled to judgment as a matter of law on those affirmative defenses.

> **B.    The circuit court did not err by awarding attorney fees.**

HRS § 634G-9 (Supp. 2022) provides:

> On a motion under section 634G-3(a) the court shall[10] award costs, reasonable attorney's fees, and reasonable litigation expenses related to the motion:
>
>> (1)   To the moving party if the moving party prevails on the motion; or

---

[9]    "In certain circumstances, the <u>Noerr-Pennington</u> doctrine provides counsel general immunity from statutory liability for their litigation activity based on the First Amendment right to petition the government for a redress of grievances."  <u>Greenspon v. Deutsche Bank Nat'l Tr. Co.</u>, 158 Hawaiʻi 39, 45 n.4, 583 P.3d 812, 818 n.4 (2026) (citing <u>Sosa v. DIRECTV, Inc.</u>, 437 F.3d 923, 929 (9th Cir. 2006)).

[10]    UPEPA § 10, comment 1 explains:

> The mandatory nature of the relief provided for by this section is integral to the uniformity of the Act.  States that do not impose a mandatory award upon dismissal of a cause of action will become safe havens for abusive litigants.  Without the prospect of having to financially reimburse a successful moving party, SLAPP plaintiffs will be able to file their frivolous suits in such states with impunity, knowing that, at worst, their claims will only be dismissed.  But because moving parties would be financially responsible for the expense of obtaining that dismissal, the effect of the abusive cause of action is nevertheless achieved.  The only way to assure a truly uniform application of the Act is to require the award of attorney's fees to successful moving parties.

> (2) To the responding party if the responding party prevails on the motion and the court finds that the motion was frivolous or filed solely with intent to delay the proceeding.

Because the circuit court correctly granted Alston and Chee's special motion to dismiss, it did not abuse its discretion by awarding them attorney fees under HRS § 634-9(1). Hallums does not challenge the amount of the award.

### C. The circuit court acted outside its discretion by not sufficiently explaining why it denied the motion for Rule 11 sanctions.

Petricevic signed Hallums's amended complaint. Under HRCP Rule 11(b) (eff. Oct. 28, 2019), he certified

> that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

The amended complaint alleged:

> 29. SHOPO's counsel Kikaha Chee made a notarized and false complaint against [Hallums] in [sic] July 15, 2022, thereby making himself and his law firm witnesses — at the very least — in this case.
>
> . . . .
>
> 31. On July 28, 2022, SHOPO's counsels **AGAIN** sent a letter to HPD's PSO office making knowingly false criminal

16

allegations against [Hallums] and demanding that [Hallums] be criminally investigated.

32. Then, amazingly enough, since they realized that HPD's PSO's [sic] office will not take action against [Hallums] and ONE DAY LATER, SHOPO's counsels AGAIN retaliated against [Hallums]. On July 29, 2022, SHOPO's counsels — presumably attempting to use Mr. Alston's considerable political influence **1**, AGAIN sent a letter to HPD — this time to newly appointed HPD Chief Logan **2** — and AGAIN making knowingly false criminal allegations against [Hallums] and demanding that [Hallums] be criminally investigated.

. . . .

37. Upon information and belief, being hesitant to put his name on this attempt, [Alston] conspired with and instructed his young associate Defendant Chee to write 3 separate letters to HPD (2 letters to HPD PSO office and one letter to HPD Chief Logan) all in July of 2022 where Defendant Chee would defame [Hallums] to HPD by making false criminal allegations about [Hallums] by way of Defendant Chee submitting notarized complaint about [Hallums] to the HPD making criminal allegations that both Defendant Alston and Chee knew to be false and/or for which they had no evidence.

. . . .

42. All of the above-described conspiracy and misconduct executed by Defendants Alston and Chee were committed completely outside the scope of their employment from their employer and outside the scope of their employment from their clients that they represent in this case since all of their actions were completely, intentionally and outside of any and all applicable law, ethical and professional standards.

(Emphasis in original.)

Alston and Chee's Rule 11 motion argued those allegations were "utterly baseless," "barred under controlling Hawaiʻi law," and "transparently a bad faith tactical maneuver to unnecessarily delay and increase the costs of litigation and deprive the SHOPO defendants of their choice of counsel in *Hallums v. SHOPO*." Attached to the motion were copies of emails from Petricevic that Alston and Chee claimed "threatened litigation against" them.

Petricevic argued the Rule 11 motion was barred by res judicata or collateral estoppel because the court presiding over

17

Hallums's lawsuit against SHOPO had denied an HRCP Rule 11 motion; Hallums "did not do anything worthy of sanctions"; and Alston and Chee "are misrepresenting facts regarding [Petricevic's] threatening to sue" them.[11]

The motion was heard on December 5, 2023. The circuit court stated:

> Okay. Just so counsel knows, my inclination is I've dismissed this case, right? So my inclination is not to impose sanctions based on Rule 11 at this point.

After hearing brief arguments from counsel, the court stated:

> All right. I'll tell you this, Mr. Petricevic. It was a very thin line. But I give you the benefit of the doubt on this one. But at the appellate level, they treat Rule 11 much more seriously. So all I can say is do what you feel you gotta do, but I came close. I don't know what the next level will do. Okay?

The order summarily denying the motion was entered on December 20, 2023.

The determination of an HRCP Rule 11 motion "is fact intensive, requiring specific findings regarding the nature of the potentially sanctionable conduct and surrounding circumstances." Deutsche Bank Nat'l Tr. Co. v. Greenspon, 143 Hawaiʻi 237, 244, 428 P.3d 749, 756 (2018) (reviewing order denying motion under Hawaiʻi District Court Rules of Civil Procedure Rule 11). "In considering whether a complaint was supported by fact and law 'to the best of the signer's knowledge,

---

[11] Petricevic also argued, in circuit court, that the motion was untimely because the circuit court had previously granted Alston and Chee's HRS § 634G-6 motion to dismiss. He doesn't make the argument in his answering brief on the cross-appeal. We note that the argument lacked merit because Alston and Chee timely served the motion then filed it in compliance with HRCP Rule 11(c)(1)(A).

18

information, and belief,' a court must make some assessment of the signer's credibility." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402, 110 S. Ct. 2447, 2459, 110 L. Ed. 2d. 359 (1990) (quoting Fed. R. Civ. P. Rule 11).[12]  "Familiar with the issues and litigants, the [trial] court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by [federal] Rule 11." Id.; In re Hawaiian Flour Mills, 76 Hawaiʻi 1, 15, 868 P.2d 419, 433 (1994) (agreeing that "the trial court 'is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to serve Rule 11's goal of specific and general deterrence.'" (quoting Cooter & Gell, 496 U.S. at 404, 110 S. Ct. at 2460, 110 L. Ed. 2d. 359)).

Here, the circuit court did not announce or enter findings of fact or conclusions of law, or otherwise explain why it denied Rule 11 sanctions.  A trial court "abuses its discretion when it denies [federal Rule 11] sanctions with no explanation, or with an explanation that is so conclusory that the appellate court cannot review the substance of its decision[.]" LaSalle Nat'l Bank of Chi. v. County of DuPage, 10 F.3d 1333, 1338 (7th Cir. 1993) (citations omitted); see also In re Elaine Emma Short Revocable Living Tr., 147 Hawaiʻi 456, 465, 465 P.3d 903, 912 (2020) (stating that "when the lower court has failed to issue the requisite findings of fact to enable

---

[12]     "Where we have patterned a rule of procedure after an equivalent rule within the [Federal Rules of Civil Procedure], interpretations of the rule by the federal courts are deemed to be highly persuasive in the reasoning of this court." Gold v. Harrison, 88 Hawaiʻi 94, 105, 962 P.2d 353, 364 (1998) (citing federal cases applying federal Rule 11).

meaningful appellate review, it is not the function of the appellate court to conduct its own evidentiary analysis").

As the dissent points out, the supreme court's pre-Greenspon Rule 11 cases applied the pre-2000 version of HRCP Rule 11, which mandated imposition of sanctions upon the finding of a violation.  See Puna Geothermal Venture, 106 Hawaiʻi at 335, 104 P.3d at 922; Fujimoto v. Au, 95 Hawaiʻi 116, 122 n.2, 19 P.3d 699, 705 n.2 (2001); Enos v. Pac. Transfer & Warehouse, 79 Hawaiʻi 452, 456, 903 P.2d 1273, 1277 (1995); Hawaiian Flour Mills, 76 Hawaiʻi at 16, 868 P.2d at 434.  Because sanctions were mandated, it made sense for an appellate court to conduct its own review of the record to determine whether (or not) Rule 11 had been violated.

Under the current Rule 11(c), however, "the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) of this Rule or are responsible for the violation."  (Emphasis added.)  One of the conditions stated is that the sanction "be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."  HRCP Rule 11(c)(2).

A party or attorney being sanctioned for violating Rule 11 is entitled to know "with reasonable specificity, the perceived misconduct" for which the sanction is being imposed, and why.  Short Tr., 147 Hawaiʻi at 466, 465 P.3d at 913 (quoting Enos, 79 Hawaiʻi at 459, 903 P.2d at 1280).

A moving party whose Rule 11 motion is denied is equally entitled to know, with reasonable specificity, why no

20

violation was found or, if a violation was shown, why sanctions were denied or why a sanction other than that requested was imposed.[13]  That is especially so if the trial court determines that Rule 11 was violated, but decides a sanction is not warranted to serve Rule 11's goal of specific and general deterrence.

And, under the current Rule 11, "permitting an appellate court to scour the evidentiary record of a case for any factual basis in the record to support a trial court's decision . . . would also allow . . . an appellate court to affirm a trial court's decision based on credibility determinations that were never made by a trial court."  Short Tr., 147 Hawaiʻi at 467, 465 P.3d at 914 (discussing right-result-wrong-reason holding in Poe v. Haw. Lab. Rels. Bd., 87 Hawaiʻi 191, 197, 953 P.2d 569, 575 (1998)); Cooter & Gell, 496 U.S. at 402, 110 S. Ct. At 2459, 110 L. Ed. 2d. 359 ("In considering whether a complaint was supported by fact and law 'to the best of the signer's knowledge, information, and belief,' a court must make some assessment of the signer's credibility."); Maunalua Bay Beach Ohana 28 v. State, 157 Hawaiʻi 150, 157, 575 P.3d 783, 790 (2025) (stating that "[a]n appellate court will not pass upon issues dependent upon the credibility of witnesses" (quoting Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006))).

When the circuit court denied Alston and Chee's motion for Rule 11 sanctions it told Petricevic, "It was a very thin line.  But I give you the benefit of the doubt on this one."  The

---

[13]    We express no opinion whether Alston and Chee proved that Petricevic violated HRCP Rule 11, and this opinion should not be so construed.

record doesn't show where the circuit court's very thin line was drawn. Did the court find Petricevic did not violate Rule 11, or did it find a violation but not believe sanctions were necessary "to deter repetition of such conduct or comparable conduct by others similarly situated" under HRCP Rule 11(c)(2)?

The dissent concludes the circuit court "did not abuse its discretion in denying the Rule 11 Motion" and states "it is clear on this record that the Circuit Court was giving counsel the benefit of the doubt on whether the suit was filed for an improper purpose[.]" But the motion also argued there was "no legal basis for the claims" in the amended complaint, which contained "material statements of fact that [Petricevic] knew were false when made." See HRCP Rule 11(b)(2) & (3). As stated above, the memorandum opposing the special motion to dismiss failed to establish the viability of any of the claims in the amended complaint. The memorandum opposing the Rule 11 motion failed to show a legal basis for the claims or any facts supporting them, and did not even try to justify the questionable factual allegations in the amended complaint — for example, that Alston's and Chee's "actions were committed outside the scope of his employment from his employer" when each of Chee's letters was written on his law firm's letterhead and stated he represented SHOPO.

Whether a trial court grants in whole or in part or denies an HRCP Rule 11 motion, the parties should be able to know why and, on appeal, it should not fall on an appellate court to scour the record and second-guess how the trial court applied its discretion.

22

The dissent also posits that "sanctions in the form of the further relief sought in the Rule 11 Motion, an award of attorney's fees, was unnecessary" because a fee award was mandatory under HRS § 634G-9. Fees awardable under HRS § 634G-9 are those incurred on an HRS § 634G-3(a) special motion to dismiss. Alston and Chee's Rule 11 motion sought fees incurred on the Rule 11 motion. Although not at issue here, Rule 11 also contemplates "directives of a nonmonetary nature, [or] an order to pay a penalty into court," "to deter repetition of such conduct or comparable conduct by others similarly situated." HRCP Rule 11(c)(2).

We conclude that the circuit court acted outside its discretion by denying Alston and Chee's motion for HRCP Rule 11 sanctions without sufficiently explaining its reasons to allow meaningful and more efficient appellate review. We take judicial notice that the judge who heard the motion has retired from the bench. On remand, the previous denial of the motion shall not constitute the law of the case. See HRCP Rule 63. A new judge must rehear the motion and announce or enter findings of fact and conclusions of law explaining the new decision.

## V. CONCLUSION

The April 16, 2024 Final Judgment is affirmed. This case is remanded to the circuit court for post-judgment proceedings on Alston and Chee's motion for Rule 11 sanctions.

On the briefs:

John-Anderson L. Meyer,
Claire Wong Black,
Wendy F. Hanakahi,
for Defendants-Appellees/

/s/ Keith K. Hiraoka
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge

Cross-Appellants
Paul Alston and
Galen Kīkaha Chee.

Bosko Petricevic,
for Plaintiff-Appellant/
Cross-Appellee
David Leonard K. Hallums.

<u>CONCURRING AND DISSENTING OPINION BY LEONARD, J.</u>

I concur with the Majority's analysis with respect to the Hawaiʻi Public Expression Protection Act (**HPEPA**), Hawaii Revised Statutes (**HRS**) Chapter 634G, including the award of attorney's fees pursuant to HRS § 634G-9 (Supp. 2022). However, I respectfully dissent from the Majority's conclusion that the Circuit Court of the First Circuit (**Circuit Court**)[14] abused its discretion when it denied Defendants' Motion for Rule 11 Sanctions filed on November 14, 2023 (**Rule 11 Motion**), by Defendants-Appellees/Cross-Appellants Paul Alston and Galen Kikaha Chee (**Alston and Chee**), because the Circuit Court did not announce or enter Findings of Fact (**FOFs**) and Conclusions of Law (**COLs**) explaining its reasons for denying the Rule 11 Motion.

I conclude that the Circuit Court did not abuse its discretion here. My reasoning is primarily three-fold: (1) the rule itself contains no such mandate for orders denying sanctions; (2) Hawaiʻi appellate courts have not previously imposed such a mandate for orders denying Rule 11 sanctions; and (3) the Circuit Court has wide discretion <u>not</u> to impose sanctions, even for the relatively simple reasons that were articulated here, that Circuit Court was giving counsel "the benefit of the doubt on this one" and it had already decided to dismiss the case.

The Majority lays out the certifications an attorney or self-represented party makes, pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 11(b) (2019), when presenting to the court a pleading, written motion, or other document. HRCP Rule 11(c) provides the sanctions that a court <u>may</u> impose for a violation of HRCP Rule 11(b), including how such sanctions are initiated (HRCP Rule 11(c)(1)), the nature of permitted sanctions, including limitations on the imposition of sanctions (HRCP Rule 11(c)(2)), and a mandate applicable to the sanctioning court's order, <u>when imposing sanctions</u> (HRCP Rule 11(c)(3)).

---

[14]     The Honorable Dean E. Ochiai presided.

HRCP Rule 11(c)(3) states:

> (3)  ORDER.  When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this Rule and explain the basis for the sanction imposed.

In short, HRCP Rule 11(c)(3) plainly requires that when a court *imposes* sanctions, it *must* describe the violative conduct and explain the basis for the sanction imposed.  It contains no parallel requirement for an order denying a request for sanctions.  The text of HRCP Rule 11 does not provide a basis for concluding that the Circuit Court abused its discretion in entering an order denying Rule 11 sanctions without FOFs and COLs explaining the basis for the denial.

I have carefully considered the Hawaiʻi cases cited in the Majority Opinion, as well as the precedent relied upon in those cases.  First, the Hawaiʻi Supreme Court's opinion in Deutsche Bank Nat'l Tr. Co. v. Greenspon, 143 Hawaiʻi 237, 243, 428 P.3d 749, 755 (2018), states the well-established principle that "all aspects of an HRCP Rule 11 determination should be reviewed under the abuse of discretion standard."  (Cleaned up). Greenspon stated a framework for interpreting the district courts' counterpart to HRCP Rule 11:

> Like HRCP Rule 11, DCRCP Rule 11 requires the signatory to make reasonable inquiry into the facts of the case to ensure that "the filed document [is] supported by existing or discoverable evidence." Fujimoto v. Au, 95 Hawaiʻi 116, 151-53, 19 P.3d 699, 735-36 (2001).  DCRCP Rule 11 also requires the signatory to certify that the filing was not undertaken for an "improper purpose".  The determination of whether these requirements have been met is fact intensive, requiring specific findings regarding the nature of the potentially sanctionable conduct and surrounding circumstances.  See In re Hawaiian Flour Mills, Inc., 76 Hawaiʻi 1, 15, 868 P.2d 419, 433 (1994); Enos v. Pacific Transfer & Warehouse, Inc., 79 Hawaiʻi 452, 459, 903 P.2d 1273, 1280 (1995).  Additionally, a trial court's position "on the front lines of litigation" affords it insight into the practices of the local bar and the degree to which sanctions would promote DCRCP Rule 11's goals of general and specific deterrence.  Hawaiian Flour Mills, Inc., 76 Hawaiʻi at 15, 868 P.2d at 433 (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 404, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)); see also Gap v. Puna Geothermal Venture, 106 Hawaiʻi 325, 341, 104 P.3d 912, 928 (2004) (holding that the primary purpose of Rule 11 sanctions is to deter misconduct, not to shift the burden of fees). A trial court's decision as to whether to impose sanctions is thus "due a substantial degree of deference," Hawaiian Flour Mills, Inc., 76 Hawaiʻi at 15, 868 P.2d at 433, and it will

> generally be upheld unless it "exceeds the bounds of reason, all of the circumstances before it being considered." Gap, 106 Hawaiʻi at 339, 104 P.3d at 926 (quoting Enos v. Pac. Transfer & Warehouse, Inc., 79 Hawaiʻi 452, 459 n.7, 903 P.2d 1273, 1280 n.7 (1995)).

143 Hawaiʻi at 244-45, 428 P.3d at 756-57 (footnotes omitted).

Notwithstanding the recital of these general principles from prior HRCP Rule 11 case law, the Greenspon court did not reach the merits of a Rule 11 analysis, i.e., the granting or denial of Rule 11 sanctions, or even the sufficiency of an order determining whether or not sanctions should be imposed.[15] Id. at 245, 428 P.3d at 757. That is because, although the Greenspon court identified various considerations that the district court would have needed to consider on reaching the substance of the alleged Rule 11 violation, that issue was never reached. Instead, the district court exercised its discretion by determining that a final resolution of the issue of Rule 11 sanctions was premature. It denied the Rule 11 motion without prejudice. Id. The supreme court concluded that the district court "did not exceed the bounds of reason" in determining that a ruling on sanctions was premature and that the district court did not abuse its discretion in denying the Rule 11 motion without prejudice. Id.

Thus, Greenspon did not reach the issue of a substantive Rule 11 decision. Rather, the supreme court held that it was not an abuse of discretion to kick the can down the

_____

[15] I have taken judicial notice of the record on appeal in Greenspon. I note that the district court's July 23, 2014 order denying the request for Rule 11 sanctions without prejudice contains no FOFs or COLs. The order merely footnotes representations of counsel and the court's understanding of how the outcome of a closely-related circuit court matter might have a direct bearing on the case before the district court. For these reasons, the motion was denied without prejudice.

road.  Accordingly, I turn to the Hawaiʻi Supreme Court Rule 11 cases cataloged in Greenspon.

In Fujimoto, the HRCP Rule 11 issue was whether the circuit court in that case erred in imposing Rule 11 sanctions on the plaintiffs therein for failing to properly plead their derivative action claims.  95 Hawaiʻi at 152, 19 P.3d at 735. HRCP Rule 11 has been revised significantly since the 1996 version of the rule that was applicable in Fujimoto,[16] including the elimination of the mandatory sanctions upon finding a Rule 11 violation and the addition of the HRCP Rule 11(c)(3) requirement that the court shall describe the violative conduct and explain the basis for the sanction when imposing sanctions.  See id. at 122 n.2, 152 n.21, 19 P.3d at 705 n.2, 735 n.21 & HRCP Rule 11(c)(3), *supra*.

Of note here, however, is the Fujimoto court's handling of a circuit court order that did not include FOFs:

> In the present matter, the circuit court did not enter any findings describing perceived misconduct that justified the imposition of sanctions.

---

[16]     Applicable to Fujimoto, prior to substantive revisions to HRCP Rule 11 in December of 1999, HRCP Rule 11 provided in pertinent part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation[.]  If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

(Emphasis added to highlight mandatory nature of sanctions upon finding of violation under the old version of Rule 11).

> Although it is well-settled that an appellate court may affirm a judgment of the lower court on any ground in the record which supports affirmance, we believe that, in order to facilitate a meaningful and more efficient appellate review, an order imposing sanctions should set forth findings that describe, with reasonable specificity, the perceived misconduct (such as harassment or bad faith conduct), as well as the appropriate sanctioning authority (*e.g.*, HRCP Rule 11 or the court's inherent power).  For purposes of appellate review, a distinction must be made between zealous advocacy and plain pettifoggery.
>
> Whether sanctions are imposed pursuant to HRCP Rule 11 or pursuant to the court's inherent powers, the importance of specific findings that describe the perceived misconduct and the sanctioning authority is two-fold.  First, as previously noted, it allows for more meaningful appellate review as to whether the trial court exercised its discretion in a reasoned and principled fashion. Second, it assures the litigants, and incidentally the judge as well, that the decision was the product of thoughtful deliberation, and their publication enhances the deterrent effect of the ruling.  <u>The sanction order issued in this case, however, does not contain specific findings; therefore, we are compelled to review the entire record for an abuse of discretion.</u>
>
> <u>Enos v. Pacific Transfer & Warehouse, Inc.</u>, 79 Hawaiʻi 452, 459, 903 P.2d 1273, 1280 (1995) [(cleaned up)].

<u>Fujimoto</u>, 95 Hawaiʻi at 153, 19 P.3d at 736 (emphasis added).

The supreme court then proceeded to examine the record to determine whether or not the circuit court had abused its discretion.  <u>Id.</u> at 153-54, 19 P.3d at 736-37.  The supreme court did not conclude that the circuit court abused its discretion for failing to enter FOFs and COLs supporting the imposition of sanctions.[17]  Thus, <u>Fujimoto</u> does not support the Majority's conclusion that the Circuit Court abused its discretion in this case.

As highlighted in <u>Fujimoto</u>, <u>Enos</u> similarly involved a sanctions order that did not contain FOFs.  <u>Enos</u>, 79 Hawaiʻi at 459, 903 P.2d at 1280.  Like in <u>Fujimoto</u>, in <u>Enos</u>, the supreme

---

[17]    Under the current version of HRCP Rule 11, because the circuit court in <u>Fujimoto</u> imposed sanctions, HRCP Rule 11(c)(3) would require that the court describe the violative conduct and explain the basis for the sanction.

court reviewed the record carefully to conclude that the imposition of sanctions in that case was not supported by the record and, therefore, was an abuse of discretion. Id. at 459-60, 903 P.2d at 1280-81. Thus, Enos does not support the Majority's conclusion that the Circuit Court abused its discretion in this case.

In re Hawaiian Flour Mills, Inc. involved, *inter alia*, the review of an order denying HRCP Rule 11 sanctions in a tax appeal case. 76 Hawaiʻi at 14-15, 868 P.2d at 432-33. The supreme court began its Rule 11 analysis by determining the applicable standard of review, establishing that all aspects of an HRCP Rule 11 determination should be reviewed for abuse of discretion and explaining why it adopted this standard. Id. at 15-16, 868 P.2d at 433-34. In the course of that explanation, the supreme court focused on the fact-dependent nature of Rule 11 decisions as support for the unitary standard of review. Id. In applying the standard to the tax appeal court's ruling that there was no HRCP Rule 11 violation, the supreme court emphasized the "clear, unambiguous, and mandatory" terms of the rule, as then constituted. Id. at 16, 868 P.2d at 434. The supreme court then proceeded to analyze the violative conduct in question, as it appeared in the record and briefing, without any mention of the tax appeal court's order denying sanctions (including whether or not it contained FOFs and COLs in support of its determination). Id. at 16-17, 868 P.2d at 434-35. Thus, In re Hawaiian Flour Mills, Inc. does not support the Majority's conclusion that the Circuit Court abused its discretion in this case.

Gap also applied the pre-2000 version of HRCP Rule 11. 106 Hawaiʻi at 334-35, 104 P.3d at 921-22. The supreme court conducted a detailed review of the allegedly sanctionable conduct, determining that with respect to some conduct, there was no abuse of discretion in levying Rule 11 sanctions, but with respect to other conduct, the circuit court did abuse its discretion in imposing sanctions. Id. at 338-41, 104 P.3d at 925-28. The focus of the court's HRCP Rule 11 discussion turned to the purpose of sanctions and whether the nature and amount of the sanctions imposed were appropriate. Id. The supreme court did not touch upon whether the circuit court's order itself was sufficiently detailed and/or explanatory with respect to the decision to impose sanctions. Thus, Gap does not support the Majority's conclusion that the Circuit Court abused its discretion in this case.

In addition, the Majority relies on a federal case, LaSalle Nat. Bank of Chicago v. County of DuPage, 10 F.3d 1333, 1338 (7th Cir. 1993), for the proposition that a trial court abuses its discretion when it denies Rule 11 sanctions with no explanation or an explanation that is too conclusory. LaSalle, however, was decided in 1993 based on a version of Federal Rules of Civil Procedure (**FRCP**) Rule 11 that appears to be the same as the pre-2000 version of HRCP that was discussed in the Hawaiʻi cases above.[18] Id. at 1337-38. Thus, if the district court in LaSalle had found a violation of FRCP Rule 11, sanctions were mandated. Id. at 1338. The LaSalle court commented that it

_____

[18] LaSalle does not reference the year the applicable FRCP Rule 11 was adopted or set forth the full text of the rule.

31

reviewed "a fully explained sanction decision" in that case.  Id.
The detailed analysis present in the LaSalle district court's
order clearly aided the appellate court in concluding that there
was no abuse of discretion in denying sanctions.  Id. at 1338-39.
The rationale in LaSalle is not unreasonable; however, the
Hawaiʻi Supreme Court proceeded in Fujimoto and Enos to conduct
its own analyses where the lower court orders lacked specific
findings.  Thus, it seems incongruous to find an abuse of
discretion in this case based on LaSalle.

Moreover, the changes in both the federal and Hawaii's
Rule 11 since that time, which are discussed above, erode the
imperative expressed by LaSalle.  As reflected in the Appendix to
Volume 28 of the United States Code Annotated, the Advisory
Committee Notes to the 1993 Amendment to FRCP Rule 11, which
adopted the FRCP language subsequently adopted in HRCP Rule
11(c)(3), specifically reject the Majority's position that denial
of sanctions without "sufficiently explaining" its reasons is an
abuse of discretion, stating:

> If the court imposes a sanction, it must, unless waived, indicate
> its reasons in a written order or on the record; **the court should
> not ordinarily have to explain its denial of a motion for
> sanctions.**  Whether a violation has occurred and what sanctions,
> if any, to impose for a violation are matters committed to the
> discretion of the trial court[.]

Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment
(accessed at 1993 Amendment 28 U.S.C.A. app. Fed R. Civ. P. 11
(West, Westlaw, including Amendments received through 6-1-2026),
Advisory Committee Notes, 1993 Amendment) (emphasis added).[19]

_____

[19]    It further appears that LaSalle reflects a minority view in the
federal courts.  See, e.g., Winterrowd v. Am. Gen. Annuity Ins. Co., 556 F.3d
continue...

32

Absent clear Hawaiʻi precedent adopting the rationale stated in LaSalle or the further modification of the current version of HRCP Rule 11(c)(3) to mandate detailed descriptions and explanations when Rule 11 sanctions are denied, I decline to view LaSalle as applicable authority to conclude that the Circuit Court abused its discretion in this case.[20]

Further, I conclude that the Circuit Court did not abuse its discretion in denying the Rule 11 Motion. Under the current version of HRCP Rule 11, the Circuit Court has wide discretion not to impose sanctions, including for the reasons that were articulated here.[21] First, the Circuit Court indicated that it was giving counsel "the benefit of the doubt on this one." While a further explanation may have been helpful, it is clear on this record that the Circuit Court was giving counsel

---

[19]    ...continue
815, 826 (9th Cir. 2009); Gibson v. Solideal USA, Inc., 489 Fed.Appx. 24, 32 (6th Cir. 2012) (citing Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc., 88 F.3d 368, 375 (6th Cir. 1996); Burns v. Seaworld Parks & Ent., Inc., No. 24-2958, 2026 WL 637292 at *1 n.8 (3d Cir. Mar. 6, 2026) (citing Moeck v. Pleasant Valley Sch. Dist., 844 F.3d 387, 391 (3d Cir. 2016)); Perez v. Posse Comitatus, 373 F.3d 321, 327 (2d Cir. 2004); but see Armendariz v. Chowaiki, 683 F. App'x 338, 342 (5th Cir. 2017).

[20]    The Majority also points to In re Elaine Emma Short Rev. Living Tr., 147 Hawaiʻi 456, 465, 465 P.3d 903, 912 (2020), for the proposition that "when the lower court has failed to issue the requisite findings of fact to enable meaningful appellate review, it is not the function of the appellate court to conduct its own evidentiary analysis." I conclude that the case is inapposite. While the trend in many instances has clearly been for the Hawaiʻi appellate courts to decline to conduct a detailed record review when FOFs are lacking or deficient, that principle has not been previously applied to a denial of HRCP Rule 11 sanctions, as discussed herein, and Elaine Emma Short Tr. presents starkly different circumstances. There, the probate court modified the terms of a trust without stating on what basis the court found an ambiguity in the trust, or even whether such ambiguity formed the basis for the court's determination. Id. at 465, 465 P.3d at 912. The probate court gave no reason for its ruling and the record was unclear, so the supreme court concluded that it could not conduct a meaningful appellate review. Id. at 465-66, 465 P.3d at 912-13. This case is distinguishable.

[21]    The imposition of sanctions is no longer mandatory, even if an attorney's conduct is objectively found to have fallen short of the imperatives of HRCP Rule 11's certification requirement.

33

the benefit of the doubt on whether the suit was filed for an improper purpose, notwithstanding its dismissal ruling in favor of Alston and Chee.

The Circuit Court stated a further part of its rationale for denying sanctions, that it had already dismissed the case.  As a remedy for the alleged HRCP Rule 11 violations, the Rule 11 Motion asked the Circuit Court to strike the complaint and first amended complaint.  Clearly, that was no longer necessary because the court had already dismissed the case, as explained by the Circuit Court.  In addition, although not specifically mentioned at the hearing on the Rule 11 Motion, at the prior hearing, on the motion to dismiss the case, the Circuit Court denied the request for attorney's fees in the motion to dismiss specifically "without prejudice" to defendants seeking fees and costs pursuant to HRS § 634G-9.  As set forth in Section IV.B. of the Majority's opinion – with which I concur in part – HRS § 634G-9's award of attorney's fees and costs is <u>mandatory</u> if, as in this case, a moving party prevails on a HRS § 634G-3(a) special motion to dismiss.  Thus, it appears that sanctions in the form of the further relief sought in the Rule 11 Motion, an award of attorney's fees, was unnecessary.[22]  Under these circumstances, and in light of the lack of clear Hawaiʻi authority mandating FOFs and COLs in an order denying HRCP Rule

---

[22]    The Majority comments that further sanctions could have been imposed, but the purpose of Rule 11 sanctions is to deter, rather than to compensate or maximize punitive measures.  <u>See</u> HRCP Rule 11(c)(2) and Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment.

11 sanctions, I conclude that the Circuit Court did not abuse its discretion in denying the Rule 11 Motion.[23]

Even if the Hawaiʻi Supreme Court were inclined to apply a new standard in civil cases requiring a more detailed explanation for denying Rule 11 sanctions, I would respectfully suggest that they do so prospectively to avoid inequity. See Winn v. Brady, 156 Hawaiʻi 119, 126, 570 P.3d 1086, 1093 (2025).[24]

For these reasons, I dissent from the Majority's conclusion that the Circuit Court abused its discretion in conjunction with its denial of the Rule 11 Motion. I would affirm the April 16, 2024 Judgment in its entirety.

/s/ Katherine G. Leonard
Associate Judge

---

[23] Finally, I note that pursuant to Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4), Alston and Chee's argument that the Circuit Court's ruling did not include a sufficiently detailed explanation should be disregarded, because their counsel did not bring this alleged error to the attention of the Circuit Court, notwithstanding a clear opportunity to do so. At the close of the hearing on the Rule 11 Motion, after the Circuit Court announced its ruling and its explanation, the court said: "So submit promptly [a] short form order denying the motion for sanctions. All right?" Plaintiff's counsel said: "Yes." Instead of seeking a further explanation or requesting specific findings, Alston and Chee's lawyer simply said: "Thank you, Your Honor." The circumstances of this case do not warrant a plain error review of the denial of Rule 11 sanctions.

[24] Courts consider "(a) the purpose of the newly announced rule, (b) the extent of reliance . . . on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." Winn, 156 Hawaiʻi at 126, 570 P.3d at 1093. Here, the purpose of a new standard would be to facilitate meaningful appellate review of the denial of an HRCP Rule 11 motion, notwithstanding that the rule does not expressly require an explication. That purpose would not be served by applying it in the instant case because, inter alia, the presiding Circuit Court judge has retired and a new judge cannot meaningfully recreate the former judge's impressions and credibility determinations on remand. Courts also weigh the degree to which the new rule would prejudice the parties. Id. at 127, 570 P.3d at 1094. Here, Petricevic would be prejudiced on remand for similar reasons, which would be inequitable. See In re Hawaiian Flour Mills, Inc., 76 Hawaiʻi at 15, 868 P.2d at 433 (holding that the abuse of discretion standard of review applies to Rule 11 orders because the "inquiry is heavily fact-intensive, requiring careful consideration of the particular circumstances of each case, and involving questions of reasonableness, credibility and, often, motive").